**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| MICHAEL MCLENDON | CIVIL ACTION NO. 21-1502 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| INTERNATIONAL PAPER CO. | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment filed by the Defendant, International Paper Company ("IP") (Record Document 13). Plaintiff, Michael McLendon ("McLendon"), opposes the Motion. See Record Document 15. For the reasons set forth below, the Motion is **GRANTED**.

**FACTUAL AND PROCEDURAL BACKGROUND**

This dispute arises from an injured worker's claim filed by McLendon in the 42nd Judicial District Court, DeSoto Parish, Louisiana. On Decemebr18, 2020, McLendon, in the course and scope of his employment with Red Oak Timber, entered IP's Mansfield Mill to deliver a load of logs. While the logs were being unloaded, McLendon stood inside the Driver's Protective Cage pursuant to IP's procedures and policies. McLendon asserts that the floor of the cage was wet which caused him to slip when he exited resulting in significant injuries. See Record Document 1-2. McLendon filed this suit against IP alleging negligence for the unkept premises and liability under the doctrine of *res ipsa locquitur*. See id. IP removed this matter to this Court under diversity jurisdiction and has now filed the instant Motion for Summary Judgment.

# LAW AND ANALYSIS

I.  **Summary Judgment Standard**

Summary judgment is appropriate if "all of the pleadings, answers to interrogatories, admission on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party need not support its motion with affidavits or other evidence, but to defat a motion for summary judgment the nonmovant must present evidence sufficient to establish the existence of each element of his claim as to which he will have the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

II.  **Analysis**

There are two pivotal questions in this case that determine whether summary judgment is appropriate. The first is whether IP is considered McLendon's "statutory employer," such that his exclusive remedy is under the Louisiana Workers' Compensation Act. The second is whether that statute, as applied to McLendon, is constitutional.

   a.  **Statutory Employer**

IP believes it is entitled to summary judgment because prior to McLendon's alleged accident, IP and McLendon's employer, Red Oak Timber, entered into a "Master Wood Purchase and Service Agreement" ("Master Agreement") which dictated that Red Oak served as IP's independent contractor to cut and deliver wood to IP's mills. The Master Agreement, underscores IP, contains a provision in Section 15 which states,

> In Louisiana, for work and/or services performed by Seller [Red Oak] at Buyer's [IP] owned or leased sites, it is further agreed between Seller and Buyer that the work being performed by Seller is part of Buyer's trade, business or occupation, and the work performed by Seller pursuant to this

> Agreement is an integral part of and essential to the ability of Buyer to generate Buyer's goods, products and/or services. Accordingly, pursuant to La. R.S. 23:1061, Buyer is the statutory employer of Seller's employees, including both direct and statutory employees, performing work under this Agreement....

Record Document 13-6 at 2. Because of the explicit language of the Master Agreement, there is a rebuttable presumption of statutory employment. The term "statutory employer" is drawn from the Louisiana Workers' Compensation Act, La. R.S. 23:1061(A)(1), which provides that a principal, such as IP, "shall be granted the exclusive remedy protections of R.S. 23:1032...." In other words, because IP functioned as Red Oak and the work McLendon was performing at the time of his injury was "an integral part of or essential to the ability of the principal to generate that individual principal's goods, products, or services," (La. R.S. 23:1061), IP should be considered his "statutory employer," such that the only available remedies for him are through workers' compensation. See Record Document 13-1 at 4. IP argues that because the Master Agreement contains such an explicit provision establishing its position as "statutory employer," McLendon must prove that his work delivering logs to the Mansfield Mill was not integral or essential to the operation of the mill in order to rebut the presumption of statutory employment and defeat summary judgment. See Record Document 13-1 at 6.

In response, McLendon acknowledges the existence of the Master Agreement and admits that he "cannot dispute the content and substance of the produced Master Wood Purchase and Service Agreement allegedly entered into between Red Oak Timber and International Paper Company or that it contains language which indicates that pursuant to La. R.S. 23:1061, IP is the statutory employer of Red Oak Timber's employees performing work under the agreement." Record Document 15 at 2. Rather

than rebut the presumption that IP is McLendon's statutory employer, McLendon instead argues that because he was never notified that his employer had contracted away his tort claims against IP, Section 1061 of the Louisiana Workers' Compensation Act as applied to him is unconstitutional. See Record Document 15 at 3.

Based on the evidence presented to the Court, there is no genuine dispute as to whether the Master Agreement was in effect at the time of McLendon's injury. By delivering logs, he was performing work that was integral and essential to the operation of the Mansfield Mill and the creation of its product. Therefore, because IP was McLendon's statutory employer at the time of his injury, his exclusive remedy is the Louisiana Workers' Compensation Law.

### b. Constitutionality Arguments

McLendon alleges that the statute as applied violates his equal protection and procedural and substantive due process rights under both the 14th Amendment to the United States Constitution and Article 1, Sections 2 and 3 of the Louisiana State Constitution. The Courts find these arguments to be unpersuasive, but each will be discussed below.

#### i. Equal Protection

McLendon argues that Section 1061 violates the Equal Protection Clause of both the Louisiana Constitution and the 14th Amendment to the U.S. Constitution. Specifically, McLendon asserts that the statute treats similarly situated injured workers differently depending on whether the principal states in contract documents that it is the statutory employer. See Record Document 15 at 6.

The Louisiana Supreme Court has outlined the appropriate method for determining claims that a statute denied equal protection:

> The basic framework of analysis of such a claim is well settled. We must decide, first, whether the legislation operates to the disadvantage of some suspect class or impinges on a fundamental right explicitly or implicitly protected by the constitution, thereby requiring strict judicial scrutiny. If not, the legislative scheme must still be examined to determine whether it rationally furthers some legitimate, articulated state purpose and therefore does not constitute an invidious discrimination.

Bazley v. Tortorich, 397 So. 2d 475, 483 (La. 1981) (internal citations omitted). Those seeking to recover in tort suits do not come within the extremely limited category of disadvantaged classes recognized by the Supreme Court. See Schulker v. Roberson, 676 So. 2d 684 (La. App. 3d Cir. 1996). "The statute does not classify persons on the basis of race, alienage, national origin, or discriminate against discrete and insular minorities." Bazley, 397 So. 2d at 483. Neither does the Workers' Compensation statute limit the exercise of a fundamental constitutional right such as freedom of association, freedom of expression, or the right to vote. See id. If the law in question does not classify individuals by one of the suspect classifications and does not involve a fundamental right, then the burden becomes the plaintiff's to show that the law does not suitably further any appropriate state interest. See Sibley v. Bd. of Supervisors of Louisiana State Univ., 477 So. 2d 1094, 1107 (La. 1985).

The Court finds McLendon has not met this burden. McLendon cites no legal basis to support his conclusory argument that Section 1061 does not further a legitimate state interest. While Section 1061 does distinguish between certain workers that are covered by the Act and workers that are not, the constitutionality of these distinctions has been addressed numerous times, and courts have routinely found that they do not violate the

Equal Protection Clauses of either the Louisiana Constitution or the Fourteenth Amendment. See, e.g., Johnson v. Motiva Enterprises LLC, 128 So. 3d 483 (La. App. 5th Cir. 2013), writ denied, 132 So. 3d 966 (La. 2014) (finding that Section 1061 was rationally related to legitimate state purpose by spreading the cost of doing business to the industry as opposed to the individual employer). This Court declines to adopt a contrary argument considering the overwhelming jurisprudence finding this statute does not violate the Equal Protection Clause. Therefore, the Court finds that McLendon has failed to meet his burden to prove a violation of equal protection.

### ii. Substantive Due Process

McLendon next argues that IP's application of Section 1061 violates his substantive due process rights and adopts by reference his arguments addressing his Equal Protection concerns. IP opposes this argument, noting that the Louisiana legislature's enactment of Section 1061 was not arbitrary and capricious. See Record Document 16 at 4.

When a case involves social welfare legislation rather than fundamental civil rights, the test of substantive due process is whether the regulation is reasonable in relation to the goal to be attained as is adopted in the interest of the community as a whole. See Bazley, 397 So. 2d at 483. To find a violation, the court must determine that the government acted arbitrarily and capriciously without any substantial relationship to public health, safety, morals, or general welfare. See Johnson, 128 So. 3d at 495. Louisiana's statutory employer legislation is reasonable in relation to its goals. The legislature's enactment of Section 1061 was neither arbitrary nor capricious. As the Johnson court stated, "maintaining the health and safety of an injured worker until he is able to return to

work and maintaining the welfare of the workers' compensation industry are legitimate government purposes to justify the loss of the injured employee's ability to file a workers' compensation claim in a district court." See id. Finding this reasoning persuasive, this Court finds that there is a rational relationship between the statutory employer statute and preserving the health and welfare of the injured worker and the industry as a whole. Thus, Plaintiff's substantive due process rights have not been violated by IP's application of Section 1061.

### iii. Procedural Due Process

McLendon asserts that IP's application of Section 1061 deprives him of a vested, fundamental right to sue in tort under La. C.C. art. 2315. See Record Document 15 at 5. He further argues that workers' compensation procedures and benefits do not comport with the rights and claims afforded under La. C.C. art. 2315 and do not make an individual whole. See id. at 6. IP counters this by arguing that the establishment of a specialized workers' compensation court system comports with procedural due process and this system is the least restrictive means of providing an injured employee direct access to courts. See Record Document 16 at 5.

Procedural due process concerns the means of processes used by the State to effect the deprivation of a fundamental right or property interest. See Messina v. St. Charles Parish Council, 865 So. 2d 158, 161 (La. Ct. App. 5th Cir. 2003), writ denied, 871 So. 2d 354 (La. 2004), cert. denied, 544 U.S. 1060, 125 S. Ct. 2512 (2005). Similar to challenges on equal protection grounds, Section 1061 has also consistently withstood challenges centered on the deprivation of life, liberty, or property without due process of

law. In Johnson v. Motiva Enterprises, LLC, the plaintiff asserted a similar procedural due process claim. 128 So. 2d at 495. There, the Court denied the argument, explaining:

> We find that the granting of tort immunity through the statutory employer provision at issue does not deprive appellant of procedural due process and does not restrict his right to be heard at a meaningful time and manner in the workers' compensation tribunal. We find that the workers' compensation courts are the least restrictive means of providing an injured employee direct access to courts without unnecessary delays in receiving medical treatment and benefits.

Id. This Court adopts the reasoning of the Johnson court and finds that the granting of tort immunity through the statutory employer scheme does not deprive McLendon of life, liberty, or property and does not restrict his right to be heard at a meaningful time and manner. As such, the Court finds IP is entitled to judgment as a matter of law on the issue of procedural due process.

## CONCLUSION

For the reasons set forth above, IP's Motion for Summary Judgment (Record Document 13) is **GRANTED**.

A judgment consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, on this 28th day of October, 2022.

_____
S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT